BRUNETTE and another vs. SCHETTLER.

*Foreclosure of mortgage for purchase money: defense, defective title, incumbrances, &c.*

1. Where, in foreclosure, the mortgagee testified that he had secured a debt to a third party by assignment of the bond and mortgage; *held*, that this should not prevent his recovering the whole amount due theron, it not appearing that such assignment was made before the commencement of the action.

2. Where a grantee of land takes and retains possession under his deed, and no paramount title is asserted, and it is not clearly shown that there are any prior liens on the land, and the only ones alleged are in favor of persons not before the court, he will be required to pay the balance due of the purchase money.

3. If such grantee desires to have the validity of such alleged liens determined, he should apply to the court to have the holders thereof made parties.

APPEAL from the Circuit Court for *Brown* County.

Action by *Augustin Brunette* and *Jean Baptiste Brunette* to foreclose a mortgage for the purchase money of land.

Dominique Brunette, Sr., and his son, *Augustin Brunette*, executed a deed of indenture, which purports to have been made and acknowledged March 2, 1849, by which said Dominique, for the consideration of one dollar and the covenants hereinafter described, sold and conveyed to said *Augustin* (with a small quantity of other lands), "the front part of private claim No. Ten, on the west side of Fox river, commencing on the bank of the river and extending back the whole width of said claim so as to include 192 13–100 acres," upon trust that said *Augustin* would maintain said Dominique during his natural life, in his dwelling house on said premises, in a manner and to an amount therein specified, which said *Augustin*, by said deed, covenanted to do ; and he also covenanted, that during the life-time of said Dominique, he (said *Augustin*) would not make or suffer any waste of the land, nor lease nor sell it; and also that, within two years after the death of said Dominique, he would pay certain sums of money, amounting to $225, to persons named, "and to *Jean Baptiste Brunette* one-half of the stock which may [might] then be on the premises,

and also the sum of $200, or one-half of the lands" so conveyed. It was claimed by the plaintiffs, and there was proof tending to show, that the agreement for said sale was made, and said deed *drawn*, in September, 1848; but its execution was delayed by reason of the sickness of the wife of said Dominique (who died in the following spring), the absense of said *Augustin* for a time, &c.; and also that *Augustin* went into possession of the land in pursuance of said agreement in the fall of 1848, and cultivated portions of the same, and continued to support his father from that time up to the commencement of the suit.

At the time of the execution of this deed, a suit was pending in the circuit court of said county (commenced in February, 1849,) against Dominique Brunette, Sr., in favor of John F. Meade, George W. Lawe and James M. Boyd, as executors of John Lawe deceased, to recover moneys alleged to have been due said John Lawe in his life-time from said Dominique; and judgment for the plaintiff therein was recovered October 2, 1849, for $447, and execution thereon issued, which was returned *nulla bona* March 20, 1850. In June, 1854, by the written direction of one Eastman, who claimed to act as "attorney for plaintiffs" in said suit, a *pluries* execution was issued, upon which the sheriff seized "the front part of private claim No. 10," above described, and advertised the same, and sold it in July following to said Eastman for $630.28, being the amount of the judgment debt; and Eastman, as "attorney and assignee," receipted for the full amount thereof. In July, 1859, Eastman obtained a sheriff's deed upon said sale. The validity of the sale and deed is denied by the plaintiffs in the present suit, on the grounds that Eastman had no authority to direct the issue of the execution; and that the land was not subject to sale on a judgment against Dominique Brunette, Sr.

In June, 1856, *Augustin Brunette* and Dominique Brunette, Sr., sold thirty acres of said "front part of private claim No.

10 " to the defendant, *Schettler*, and conveyed it to him by a deed containing full covenants of warranty on the part of said *Augustin*. The price of the tract was $5,000, and defendant paid $2,000, and gave a mortgage back upon the land for the remaining $3,000, which is the mortgage in suit. Some time in 1859, Eastman commenced ejectment against *Schettler* in the circuit court for said county for the premises covered by this mortgage, and obtained a verdict in his favor in 1861, and the court refused a motion for a new trial; but afterwards the cause was put upon the calendar for a new trial under the statute, at the October term of the same year, and was continued from time to time by stipulation and order. It seems, however, that no order for such new trial was filed, or that it was lost before the issues in the present cause were made up; and that such fact being set up in the defendant's pleadings, and shown at the trial hereof, the court made such an order *nunc pro tunc*. *Schettler* had duly notified *Augustin Brunette* to defend said action of ejectment, and the latter had employed an attorney and conducted the defense; and in May, 1864, by a stipulation between said attorney and the attorney of Eastman, judgment was rendered in said action in favor of *Schettler*. The day before this stipulation was entered into, Eastman had quit-claimed the premises to one Joel S. Fisk.

The original and supplemental answers of *Schettler* in this action show that Eastman claimed that the conveyance from Dominique Brunette to *Augustin Brunette* was in fraud of the rights of creditors; that the judgment in favor of the executors of John Lawe became, therefore, a lien upon the land, and the sale to him in 1854, and the deed issued thereon, conveyed to him a good title. It is also alleged that *Augustin Brunette* is insolvent, and that the plaintiffs are not the owners of the bond and mortgage in suit. The supplemental answer further alleges, that Eastman, at the time of his conveyance to Fisk, was, and still is, indebted on judgments docketed in said county in

favor of various persons against him in the aggregate amount of $35,000; and also that Eastman and Fisk claim that, by virtue of said conveyance to the latter, he has acquired a title to the mortgaged premises paramount to that of defendant. Defendant therefore offers to pay the mortgage whenever plaintiffs shall remove these "clouds and apparent incumbrances upon his title to said premises;" and he demands judgment that the plaintiff *Augustin Brunette* be directed "to remove and cancel all liens and incumbrances" upon said premises not created or suffered by the defendant, and procure the same to be fully released from all claim of title, lien or incumbrance created by or derived through the sheriff's deed to Eastman, and that of Eastman to Fisk, &c.

The plaintiffs replied, first, that Eastman never had any title to the land; secondly, that the quit-claim executed by him to Fisk was obtained for defendant's benefit, and that Fisk had executed a deed of release and quit-claim to defendant, and delivered the same to plaintiffs' attorneys, and they thereby offered, at Fisk's request, to deliver said deed to the defendant; and thirdly, that the judgments against Eastman never became liens on said premises, and that the same were mostly paid and settled.

On the trial, which was in 1865, the following facts appeared in evidence, in addition to such as are stated above: 1. As to the authority of Eastman to direct the issue of the *pluries* execution in the suit of Lawe's executors against Dominique Brunette. There were seven heirs of said John Lawe, six of whom were married women. Eastman (for the purpose of protecting himself as one of the sureties on the executors' bond) attempted to buy up the interests of all the heirs, and did purchase, as he testifies, those of five of said married female heirs and their husbands; and they executed to him, in 1853, assignments under seal of all their interests in the personal property of said estate, and in all outstanding judgments in favor thereof, &c. He also

testifies that, beside paying said asssignors certain sums of money for the assignment, he promised to pay all the debts of the estate to other parties : that he had paid (at the time of the trial of this action) claims against it amounting to about $3000, being all that he deemed just, and was then defending others; that the attorney of record for said estate in the suit against Dominique Brunette, Sr., at the time when the judgment was recovered, was T. O. Howe, Esq., but he had ceased to be such at the time said execution was issued, being then judge of the circuit; that he (Eastman) received his authority to issue the execution from James M. Boyd, the acting executor, who in August, 1853, gave him an order on J. H. Howe & Haines, then acting as attorneys for the estate, for all the books, papers and effects thereof. It being alleged by plaintiffs herein that said Eastman was not in 1854 an attorney of said court, he testifies on that point: "I had been an attorney of the courts of Brown county for.about twelve years previously. I was admitted as such in 1841, under the territory of Wisconsin, but have no recollection of having been sworn as an attorney after the organization of Wisconsin as a state." James M. Boyd, above named, who was sole acting executor in 1853 and afterward, testifies, as a witness for the plaintiffs : " I never employed Eastman as attorney in that case. He asked me to authorize him to issue an execution therein, which I refused to do until he should comply with his agreement with me and the heirs of said estate. I have never sanctioned his conduct in issuing the execution. * * *Augustin Brunette* spoke to me about the sale of his property on the judgment, and asked me why I had sold it, or was going to sell it. I replied that I had not authorized Eastman to make the sale, and that he need not regard it. * * I turned over to Eastman the papers of the estate, but with the express agreement that he should not act in the matter until he had fulfilled the agreement between him and the heirs of the estate; i. e., that he

should pay all the just debts due from the estate, and obtain from all the heirs a release to me as executor. That release was never obtained or given to me. * * He agreed, when he received the papers, that in case he failed to get the signature of Mrs. Meade to the release, he would return the papers to me. * * * At that time there was no acting attorney of the estate. The papers were in the hands of James H. Howe. I gave Eastman an order for them, for the simple reason that he said he wanted to look over them, but was not to act until he complied with his agreement to get the release." Mrs. Meade was one of the heirs, who never assigned her claims against the estate. 2. As to the alleged insolvency of *Augustin Brunette*, it appeared that judgments amounting to $450 were recovered against him in said county, in 1857 and 1858, which remained unsatisfied. An officer who had made return of *nulla bona* on several executions upon said judgments, being called for the defendant, and being asked on cross-examination, whether he had ever undertaken to levy on real estate of said *Augustin*, answered: "It is my impression that he sold the private claim on which he formerly lived, before I had the executions in my hands. I supposed he had sold all the lands he owned there to the defendant in this suit." Said *Augustin*, being called for the plaintiffs, testified that he owed one Poquette $500, with interest for three or four years, secured by mortgage on his land, which was part of the land conveyed to him by the aforesaid deed from his father, and was worth $5000 or $6000 ; that he owed one Marshall about $800, which was "secured out of the *Schettler* mortgage ;" that he had purchased from Fisk a mill and land for which he was to pay $3000 ; and that $1500 thereof was secured to Fisk "by assignment of the *Schettler* mortgage," and the remainder by a lien on the mill. 3. The defendant testified that he had an agreement with Eastman, by instrument on record, that if the latter succeeded in his said ejectment suit, defendant was to

pay him $3000, and receive from him a deed of the land.   4.
The plaintiffs' counsel, with the consent in open court of said
Fisk, offered defendant, and he accepted, a quit-claim deed of
the premises from Fisk.

The circuit court found the facts alleged in the complaint,
and that the matters alleged in the answers as to the alleged
title of Eastman had been adjudicated against Eastman and in
favor of *Schettler* in the ejectment suit aforesaid; and rendered
judgment for the plaintiffs for $4.817; from which the defend-
ant appealed.

*Tim. O. Howe* and *H. L. Palmer*, for appellant:

1. The testimony of *Augustin Brunette* shows that the plaint-
iffs were not the owners of the bond and mortgage, but that
an interest to the extent of $1500 had been assigned to Fisk.
2. The amount of $4,817, was not due on the bond and mort-
gage to the plaintiffs, but at least $1500 of that amount was
due, if at all, to Fisk.   3. The fact that the execution under
which the land was sold to Eastman was issued upon his order,
he having become the assignee of the interests of nearly all the
heirs at law, and that it was not subscribed or endorsed with
the name of the attorney, did not vitiate it.   It was in the
form prescribed by the statute, and was subscribed by the offi-
cer by whom it was issued.   This was a compliance with the
statute in force at that time.   R. S. 1849, ch. 90, sec. 1.   The
sale and conveyance thus made passed to Eastman whatever
title Dominique Brunette, Sr., had in the mortgaged premises,
and placed him in a position to contest the validity of the con-
veyance made by Dominique Brunette, Sr., to *Augustin Bru-
nette.   Eastman v. Schettler*, 13 Wis., 324; *Jackson v. Terry*, 13
Johns., 471; *Sands v. Hildreth*, 14 id., 493; *Jackson v. Meyers*,
18 id., 425; *Anderson v. Boyd*, id., 513.   Under the decision of
this court in *Eastman v. Schettler*, above cited, the validity of
that conveyance was afterwards successfully contested; a ver-
dict was rendered at the circuit in favor of Eastman, which the

court refused to set aside on motion; and the record does not show that a new trial was ever legally ordered. Under this adjudication, Eastman acquired title to the premises paramount to that of defendant. *Augustin Brunette's* covenant of seizin was therefore broken; and he being shown to be insolvent, it would be inequitable to require the defendant to pay him the amount due on the bond and mortgage. The allegation of the supplemental answer, as to outstanding judgments against Eastman at the time of his quit-claim to Fisk, is substantially admitted by the reply. Would a judgment entered *by stipulation* in the ejectment suit of Eastman against *Schettler*, after the decision of that case by this court, and after a trial and judgment in favor of Eastman at the circuit, conclude the judgment creditors of Eastman? If not, the covenant of seizin in the conveyance to the appellant was broken, and the judgment in this action should be reversed. 2 Hilliard on R. P., 403; *Le Roy v. Beard*, 8 How. (U. S.), 451; *Pollard v. Dwight*, 4 Cranch, 421; *Duvall v. Craig*, 2 Wheat., 45–62; *McCarty v. Leggett*, 3 Hill, 134. 4. In any event, the judgment against Dominique Brunette, Sr., was an incumbrance which the respondent was bound to remove, in order to keep good his covenants, and which he did not remove. In such a case a court of equity would rescind the contract of sale, and ought not to enforce the security given for the purchase money. Adams' Eq., 179, note; *Campbell v. Whittingham*, 5 J. J. Marsh., 96; *Napier v. Elam*, 6 Yerg., 108; *Parkman v. Welch*, 19 Pick., 231.

*John C. Neville* and *E. H. Ellis*, for respondents, among other things, cited *Taft v. Kessel*, 16 Wis., 277, to the point that the grantee continuing in possession, with no paramount title asserted against him, will be compelled to pay the balance due of purchase money. They also contended that Eastman never acquired any title to the premises.

COLE, J. It is insisted on the part of the appellant, that the finding of the court below is erroneous in this: that there is

no evidence to support the conclusion that the respondents were the owners of the bond and mortgage. On the contrary, it is said that the undisputed testimony of the respondent *Augustin Brunette* shows that they were not the owners of the bond and mortgage, but that an interest to the extent of $1500 had been assigned to Fisk. It does not appear, however, from the testimony, that Fisk became interested in the mortgage debt previous to the commencement of the suit. *Augustin Brunette* says, in his testimony, that he has secured to Fisk, by assignment, $1500 out of the *Schettler* mortgage; but when he made this assignment he does not say. If Fisk has become interested in the debt since the commencement of the suit, he will be bound by the judgment. The appellant has not required Fisk to be made a party, and it seems too late, at this stage of the cause, to raise the objection that he should be before the court; especially as it does not appear that he acquired his interest before the suit was commenced.

It is further insisted, that the appellant ought not to be compelled to pay the mortgage before the liens and incumbrances upon the land purchased by him of *Augustin Brunette* are removed and cancelled. It appears that he entered into actual possession of the mortgaged premises when he purchased, and has remained in such possession up to the present time. No paramount title has been asserted to the premises, nor is it clearly established that there are any valid liens against the property. There are no outstanding liens against the mortgaged premises, unless it be those of the judgment creditors of Eastman; and it is impossible, as the case now stands, to protect the appellant against those liens, even if they ever became liens upon the property. The most that can now be said in respect to those judgments against Eastman is, that possibly they may be held to be liens upon the mortgaged premises, though in the present state of this record that question is left in doubt and uncertainty. Nor do we think it would be proper,

in the absence of the judgment creditors of Eastman, to go into the question as to whether their judgments became liens upon the mortgaged premises or not. For it is very obvious, if we were to hold that those judgments never became liens upon the mortgaged premises, our decision would not conclude the creditors upon that question. And if the appellant had desired that matter to be definitely adjudicated and settled, he should have applied to the court to compel the respondents to make those creditors parties; or himself have brought them before the court in some proceeding in the nature of a cross action. But as the case now stands we can make no decision which will bind the creditors upon the point whether their judgments against Eastman became valid liens upon the mortgaged premises or not, nor protect the appellant against those outstanding claims.

*By the Court.*—The judgment of the circuit court is affirmed.